I therefore hold that the allegations of the petition are sustained by the law and the evidence, and that the appointment of E. B. Forbes to said position was illegal and void. And it now appearing to the court that said E. B. Forbes has resigned said position and left said Station, and that said position is vacant, it is ordered that a mandatory injunction issue to the defendant to request the Civil Service Commission for a list of eligibles for said position under the unclassified Civil Service laws of the state. Said temporary injunction is made perpetual as prayed for in said petition. To all of which rulings, and findings of the court the defendant excepts, and exceptions are granted to the defendant. Motion for a new trial, if filed, is overruled, and bond of appeal, if necessary in this case, is fixed at the sum of two hundred dollars.

---

## OFFSETTING CREDITS BY DEBTS IN A TAX RETURN.

Common Pleas Court of Cuyahoga County.

THE WHITE MOTOR COMPANY v. JOHN J. BOYLE AND JOHN A. ZANGERLE.

Decided, June 13, 1921.

*Taxation—Statutory Phrase "Legal, Bona Fide Debts" as Applied to a Tax Return—Not Used in the Narrow, Technical Sense—All Debts Legally Owing Deductible from Credits.*

In listing personal property for taxation, the owner is entitled to deduct from his credits all debts and obligations due and existing, regardless of whether founded on a consideration actually received, and including an obligation to pay taxes to the federal government.

LEVINE, J.

The plaintiff, the White Motor Company, seeks to enjoin John A. Zangerle, as auditor, and John J. Boyle, as treasurer, of Cuyahoga county, from adding to its tax return credits to the amount of $1,233,000 and from collecting taxes on same.

The operative facts necessary to a determination of this case are as follows:

During the month of May, 1919, the plaintiff filed with the defendant, John A. Zangerle, as auditor of Cuyahoga county, its tax return for the year 1919, showing the total of its personal property subject to taxation as $6,982,000, distributed as follows:

Moneys in possession or on deposit subject to order,
    on listing day, 1919 ...................... $   682,000.00
Average value of raw material, materials in process
    of manufacture, and finished articles ...... 5,114,000.00
Tools and machinery ........................ 1,186,000.00
  No return was made by the plaintiff of any credits owned by it. The reason assigned for that omission is, that the total of legal, *bona fide* debts, owing by said company, was greater than the total of all credits owned by it, as follows:
    Total credits ......................... $4,940,866.00
    Total debts .......................... 6,732,107.00

The plaintiff claims that it was entitled to set off this last item of total indebtedness, therefore leaving no net credits subject to taxation in Cuyahoga county.

In the sum of $6,732,107, being the sum total of all its debts, was included the amount of $3,025,000, owing by the plaintiff to the government of the United States, for income and excess profit taxes for the year ending Dec. 31, 1918. The plaintiff claims the right to include this amount in its legal, *bona fide* debts. The defendant, John A. Zangerle, auditor of Cuyahoga county, refused to permit the plaintiff to include in its legal, *bona fide* debts, said amount of $3,025,000, owing by it to the government of the United States for income and excess profit taxes for the year ending Dec. 31, 1918, as above stated.

Deducting this amount of $3,025,000 from the total indebtedness of the White Motor Company, leaves a balance of $3,717,-107, as the total of legal *bona fide* debts of the plaintiff. Holding to that view, the county auditor accordingly allowed only said amount of $3,717,107 to be deducted from the company's total credits of $4,940,866, leaving an item of net credits in the amount of $1,233,000. The county auditor entered upon

the tax list, or duplicate, this last item, as taxable against the plaintiff for the year 1919.

The right of the plaintiff company to include the amount owing by it to the government of the United States, as income and excess profit taxes, in its legal, *bona fide* debts, rests entirely upon the interpretation of Section 5327, General Code of Ohio, reading as follows: .

"*Credits.* The term 'credits' as so used, means the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for labor or service due or to become due to the person liable to pay taxes thereon, including deposits in banks or with persons in or out of the state, other than such as are held to be money, as hereinbefore defined, when added together, estimating every such claim or demand at its true value in money, over and above the sum of legal *bona fide* debts owing by such person. In making up the sum of such debts owing, there shall not be taken into account * * * an acknowledgment of indebtedness, unless founded on some consideration actually received, and believed at the time of making such acknowledgment to be a full consideration therefor."

What is the meaning of the phrase, "legal, *bona fide* debts owing by such person?" The defendants contend that the debts contemplated by the statute are such only as are founded on a consideration actually received by the debtor from the creditor; in other words, a debt which arose from contractual relations between the debtor and the creditor. The plaintiff contends that the phrase, "legal, *bona fide* debts" contemplates all obligations due and existing, regardless of how the obligation arose.

A careful perusal of the authorities cited in counsel's briefs discloses that, in a strict, technical sense, "debt" implies an obligation arising from contract; or, to use the language of counsel for defendant, "a debt for which a consideration was actually received by the debtor."

A tax, in its essential characteristics, is technically not a "debt." It is an impost, levied by authority of government upon its citizens for the support of the state. It is not founded on contract nor agreement.

In an enlarged sense, the word "debt" means a duty to pay on any ground, and, in this sense, includes a tax.

In the case of *Gillion Co.* v. *Westwood County*, 13 Pac., 324, or 14 Ore., 525, the court holds:

" 'Debt,' in an enlarged sense, means a duty to pay on any ground, and, in this sense, includes a tax, though in a strict, technical sense, a tax is not a debt."

Applying to the phrase, "legal *bona fide* debts," a strict, technical definition, it would necessarily exclude taxes. Applying to the phrase, "legal *bona fide* debts," the meaning of the word "debt," in an enlarged sense, it would include all obligations due and existing on any ground, and would therefore include taxes.

What was the intent of the Legislature? Did it intend to use the word "debt" in a strict, technical sense, or did it intend to use the same in an enlarged sense? Upon the answer to that question rests the determination of this case.

An early act, passed by the General Assembly, April 13, 1852 (50 Laws of Ohio, 151), dealt with the subject of taxation. Section 10 of said act is pertinent to the purpose of this inquiry:

"In making up the amount of moneys and credits which any person is required to list for himself or any other person, company or corporation, he shall be entitled to deduct from the gross amount all moneys and credits, the amount of all *bona fide* debts owing by such person, company or corporation, to any other person, company or corporation, *for a consideration received.*"

This last section was held unconstitutional, in *Exchange Bank of Columbus* v. *Hines*, 3 O. S., 1.

To remedy the defects of said Section 10, the General Assembly of Ohio passed the act of April 1, 1856 (53 Laws of Ohio 52):

"The term 'credits' shall be held to mean the excess of the sum of all legal claims and demands, whether for money or any other valuable thing" * * * "when added together, over and above the sum of the legal *bona fide* debts owing by such person."

Note the important omission of the phrase, *"for a considera-tion received."*

. Section 5327, General Code of Ohio, likewise omits the phrase, "for a consideration received." It is therefore apparent that the Legislature did not intend to qualify the phrase, "legal, *bona fide* debts," so as to limit the same to such debts only, for which a consideration was received by the debtor.

Counsel for the defendants points to the language of the last part of Section 5327, as follows:

"In making up the sum of such debts owing, there shall not be taken into account  *  *  *  an acknowledgment of indeb-tedness, unless founded on some consideration actually received, and believed at the time of making such acknowledgment to be a full consideration therefor."

Claiming that this last-quoted language supports the conten-tion that the phrase, "legal *bona fide* debts" is limited to such debts only, for which a consideration was received by the debtor. In this the court can not concur. An acknowledgment of in-debtedness must be differentiated from "legal, *bona fide* debts." The above-quoted language was intended by the Legislature to prevent fraud and imposition on the part of taxpayers, and it therefore provides that in making up the sum of legal, *bona fide* debts owing, no acknowledgment of indebtedness, such as the signing of promissory notes, or any other form of evidencing indebtedness, can be taken into account, unless such acknowl-edgment of indebtedness is founded on a consideration actually received by the debtor.

There is undoubtedly significance in the omission of the phrase, "for a consideration received," following the phrase, "over and above the sum of legal, *bona fide* debts owing by such person," and which was present in Section 10 of the act of April 13, 1852, heretofore referred to.

I shall refer to other sections of the General Code, as help-ful to our inquiry.

Section 5697:

*"How treasurer to collect delinquent personal tax.* When personal taxes stand charged against a person, and are not

paid within the time prescribed by law for the payment of such taxes, the treasurer, in addition to any other remedy provided by law for the collection of personal taxes, shall enforce the collection thereof by a civil action in the name of such treasurer against such person for the recovery of unpaid taxes. It shall be sufficient, having made proper parties to the suit, for the treasurer to allege in his bill of particulars or petition that the taxes stand charged upon the duplicate of the county against such person, that they are due and unpaid, and that such person is indebted in the amount appearing to be due on the duplicate.''

Note the language of the Legislature, ''that such person is indebted,'' meaning thereby the obligation to pay taxes.

Section 5698:

''On the trial of the action provided in the next preceding section, if it is found *that such·person is indebted*, judgment shall be rendered in favor of the treasurer prosecuting the action, as in other cases.

''*The judgment debtor*'' (speaking of the person against whom the action was brought and judgment taken) ''shall not be entitled to the benefit of the laws for stay of execution or exemption of homestead, or other property, from levy or sale on execution in the enforcement of such judgment.''

But Section 10714, which deals with the duty of executors and administrators to pay debts, reads as follows:

''Order in which debts are to be paid: * * * 4. Public rates and taxes.''

Herein the Legislature expressly speaks of public taxes as debts.

Recurring to Section 5327, and the phrase, ''legal, *bona fide* debts,'' used in that section; what was the purpose of this section, which in substance provides that ''legal, *bona fide* debts'' may be set off against credits, and that net credits only are taxable? There is but one answer. The Legislature apparently recognized the injustice of taxing credits, without regard to legal, *bona fide* debts owing by the person whose credits are sought to be taxed. Credits do not constitute a correct criterion or representation of what a person possessing same owns as his personal property. The injustice of taxing credits with-

out regard to debts is not a debatable question. By force of said Section 5327, balances only may be taxed.

In this, the Legislature followed not only the dictates of justice, but also sound business policy, recognizing that a correct estimate of the financial standing of an individual or corporation can not be ascertained unless both sides of the ledger, debit as well as credit, are considered, and a trial balance struck. Bearing in mind the purpose of the Legislature, it is presumed that the language used by it was intended to be broad enough to carry out said purpose. If the contention of the defendants is correct, that the phrase, "legal, *bona fide* debts" is intended in a strict, technical sense, and is therefore limited to such debts only as arise from contractual relations between debtor and creditor, and for which a consideration was received by the debtor, and necessarily excluding the obligation to pay taxes to the government, then the Legislature failed of its purpose, which was to tax net credits, or balances, only.

The strict, technical construction sought for by the defendants, is, to my mind, inimical to the ends of justice, and would prove a source of oppression of the citizens of the state. The effect of it would be to tax individuals and corporations on personal property which they do not, in fact, own or possess. There are numberless obligations to pay, which arise other than from contractual relations. The obligations are nevertheless due and existing, and necessarily affect the value of the credits sought to be taxed.

The liberal construction of the phrase, "legal, *bona fide* debts," sought for by the plaintiff, is more in conformity with abstract justice, and the very purpose which the Legislature had, in passing said Section 5327.

Reference is made to the case of *Bayliss* v. *City of Des Moines,* 127 Ia., 124. The syllabus of the case is as follows:

"The term 'debt,' as used in Code, Section 1311, does not include delinquent taxes, in the sense that the statute authorizes a taxpayer to set forth against the assessment of his moneys and credits, the unpaid taxes of a previous year, as a debt in good faith owing by him."

It is pointed out to this court that, if the term "legal, *bona*

*fide* debts'' is broad enough to include an obligation to pay taxes, that persons and corporations within this state who are delinquent in the payment of their obligation to pay taxes, will be enabled to off-set the unpaid taxes of a previous year or years, as debts, thereby causing great loss to the state. This contention is groundless, for emphasis must be placed upon the words, *''bona fide.''* Such delinquent taxes, while they may be considered legal debts, are not *bona fide* within the meaning of the section.

The obligation of this plaintiff to pay to the government of the United States, income and excess profit taxes, is personal in its character, and is a legal obligation. There is no question as to the good faith of this legal obligation, and it is, therefore, *bona fide.*

I therefore hold that the Legislature intended the phrase, ''legal, *bona fide* debts,'' as used in Section 5327, to cover all obligations to pay money, due and existing, on any ground, and includes the obligation to pay taxes to the government. The test is not how the debt arose, but is it legally due and existing, and *bona fide?*

The plaintiff was entitled to include the amount of $3,025,000 owing by it to the government of the United States, for income and excess profit taxes for the year ending Dec. 31, 1918, in its legal, *bona fide* debts, and to set off the same against credits owned by it.

Various other considerations have been urged upon this court, in support of a strict, technical definition of the word ''debts,'' as used in the statute, among them the loss that would ensue to the state. In this, I can not concur. The state can not be said to lose by failing to obtain or keep money or funds to which it is not legally entitled. It should not seek to enrich itself by oppressive or illegal means. I have no doubt that the state authorities are actuated by a noble sense of duty in seeking to bring to the public treasury all possible funds. The ends of justice, however, require otherwise, and I therefore grant the prayer of plaintiff's petition.

The defendants are permanently enjoined as prayed for in said petition.